Case number 17-1566, Timothy Finley v. Erica Huss et al. Oral arguments will be 15 minutes for the appellant. Ms. Galen Bascom for the appellant. May it please the court. My name is Galen Bascom on behalf of This case concerns the solitary confinement of a contrary medical judgment for nearly four months of a person with an extensive history of suicidal behaviors and self-harming behaviors. At this preliminary stage of the proceeding, the district court had the obligation to construe the pro se complaint liberally, to draw all reasonable inferences in its favor, and to correctly apply the prevailing law. The district court did not do so, offering only inadequate reasons, and for some claims, no reasons whatsoever. In all respects, the claims should be reinstated. Turning first to the Eighth Amendment claim, Estelle and Farmer proscribe deliberate indifference to serious medical needs and risks of harm to prisoners. The test is both objective and subjective, and in this case, both prongs were satisfied. For the objective prong, this court has held in Comstock that severe mental illness is enough, and for Mr. Finley in particular, there was specific evidence of what his serious mental illness was. He had the history of self-injurious behavior. He had extensive cutting. He had swallowed nine razor blades, and he had been diagnosed with bipolar disorder and with borderline personality disorder. He had also previously attempted to commit suicide. When he was put in solitary, did they give as a reason to preserve his own safety, or did they say he had engaged in misconduct and this was a punishment? The form says that it's for possession of dangerous contraband. And that would be the razors? Correct, the razors that he used to harm himself and that he swallowed. Okay, so it was a penalty situation? Correct, Your Honor. Thank you. Ms. Bascom, could I suggest that you make sure you leave time to discuss the ADA claim and the atypical hardship claim? Certainly, Your Honor. For the Eighth Amendment claim, there was a specific recommendation by a medical professional that he would likely suffer harm while in solitary confinement. And this is enough for the objective component as well, but it also shows why the subjective component was satisfied. The subjective component requires that there exist facts on which an inference of the harm could be drawn and that the inference was actually drawn. Here, there's far more than that. There was the allegation in the complaint that there were multiple meetings that discussed Mr. Finley's condition and there was this particular recommendation. Ms. Salmi was responsible for Finley's medical treatment and there was no warrant to override that medical judgment. All of the reasons given by the district court for dismissing these claims were inadequate. There was the fact that he was no longer in confinement, which does not erase the violation. There's the fact that he received some treatment, which does not prove a lack of deliberate indifference. And there was the fact that he could have been treated even worse, which obviously does not show that the defendant's behavior did not rise to the level of deliberate indifference. Here, there was a prolonged confinement of an individual with severe mental illness for possession of tools of self-harms, and that is enough to show the knowing disregard of a substantial risk of harm. So turning next to the ADA claim, the district court did not even mention this claim in explaining why it should be dismissed. Whatever the errors in the analysis of the Eighth Amendment claim, the lack of analysis whatsoever is even worse. Under the ADA, Mr. Finley had to show that he had a qualifying disability and that he was subject to discrimination on account of that disability. The qualifying disability is well established and the discrimination that he was subjected to included the failure to provide reasonable accommodation for... Who are you seeking to hold liable under the ADA and in what capacity? Defendant Huss in her official capacity. Mr. Finley here is seeking a permanent injunction. He is also attempting to amend his complaint to add a claim for damages. Why isn't the injunction a moot point at this point? He's not in solitary at this point, is he? Your Honor, he's no longer in solitary confinement. He is currently in the interim care program at Marquette. However, it's not moot because what he is seeking is a permanent injunction against being placed in solitary confinement. How could we issue a permanent injunction when we don't have any idea what his mental health is going to be in the future? Your Honor, this court is not faced with the question of whether to enter a permanent injunction. That would be a question on remand if he makes out a claim that could be allowed to proceed. The district court would be under the obligation to narrowly tailor that injunction to the specific facts of the case and one could imagine ways that that tailoring could be accomplished. For example... Let me ask you the question in another way. It seems to me what you're saying is that it may be pled in the amended complaint. If we remand on the Eighth Amendment claim, then presumably he would be allowed to amend and he can sue anybody on anything he wants from our perspective. So why would we get into any of this if it's not in the complaint that we're reviewing? I'm sorry, Your Honor. What specifically are you wondering whether to get into? The availability of injunctive relief is certainly not a question that this court needs to address. If the decision is reversed and remanded, it's something that the district court would be able to consider. So you're saying that the complaint requests a permanent injunction regardless of his disability? The claim requests a permanent injunction against being placed back in solitary confinement and the obligation in deciding on the entitlement to that relief at the remedial stage would include narrow tailoring and all of these other considerations. But those considerations are not applicable to whether the complaint validly makes out the elements of the relevant claims. For the ADA claim, all that was necessary was to satisfy a very light burden to show that there was some accommodation that was not facially unreasonable. And placing him in the mental health unit when confronted with this possession of the tools of his self-harm was such a facially reasonable accommodation. The burden shifting framework would present an opportunity to provide, for example, alternative accommodations. But at this stage, the only question is that prima facie very light burden. And the allegations in the complaint are sufficient to satisfy it. What about the due process argument? So the same serious mental illness that entitles Mr. Finley to accommodations is also central to the nature of the confinement. So there is an atypical and significant hardship under Sandin. And that nature requires a sensitive factual analysis, which includes relevant personal characteristics of the defendant and of the prisoner. And here, Mr. Finley had the very relevant characteristic that he was suffering from a severe mental illness, specifically his bipolar and borderline personality disorder, his history of suicidal behaviors, and his history of self-harm. Is it fair to say that in Hardin Bay, what our court seemed to be concerned about was the idea that you could put somebody in solitary forever? This court did seem to be quite concerned with that possibility. And at the time of... Correspondingly, they didn't seem to be concerned that he had been placed in solitary for 117 days. Under different facts and circumstances, the nature of the confinement would vary and the duration... But in this case, your client was put in solitary for less than the 117 days that at least seemed to be acceptable to the panel in Hardin Bay. Am I right about that? The nature of the confinement here was quite different from the nature of the confinement there because the duration and the nature combined to... For the atypicality and the hardship analysis, if the nature is worse, then a shorter duration can be sufficient. And here... Wait, solitary, solitary, what's the nature of solitary you're talking about? Here, the relevant personal characteristic of the defendant is a critical component of that nature. The nature of the defendant, not the nature of solitary. It was the nature of the restraint for the defendant. The prison itself has policies about how similarly situated prisoners should be treated, including policies against placement over medical recommendation of documented deleterious effects in particular for prisoners with mental illness. And that is what changes the nature with respect to those individuals. The district court's one paragraph dismissal is essentially a per se rule that reads the nature of the confinement out of the analysis entirely. The allegations... Are you arguing that he couldn't be put in solitary even for or are you arguing that in order to be able to do so, he was entitled to a certain process that he didn't get? For the due process claim, it's about his entitlement to process before placement in solitary confinement as an individual suffering from mental illness. Now he got a hearing, right? He did get a hearing where he was seen cell side by defendant Huss. And what more process in the I would note first, your honor, that that is a question most appropriately resolved on remand after the liberty interest is established. But for the disciplinary context, the process provided in Wolf should be provided including not only a hearing, but the ability to call witnesses in a written statement of reasons among other possible elements of process as would be balanced in test by the district court. The allegations in the complaint here were enough to show that the nature of the hardship was atypical and significant for a liberty interest. And if this court has no further questions, I would say simply that for each of Finley's three claims, the district court failed to properly consider and credit the serious allegations in the complaint and its judgment should be reversed. Thank you. Thank you, Ms. Bascom. And I note that your firm has represented this individual on a pro bono basis. We really appreciate your doing that. Thank you. And also thank you to Mr. Greenfield for his involvement on behalf of the prisoner and to the attorneys at DLA Piper who filed an amicus brief in this case. The case is under submission.